Ms. Vogel you are up with three minutes reserved for rebuttal. Thank you, Your Honor. May it please the court, my name is Karen Vogel and I represent Axis Clearing in this appeal. The issue that's before the court with this appeal is whether the court, the district court, properly sent Axis' claim to enforce a settlement agreement to the District Court of New York. It's not disputed that arbitration is favored but even with broad arbitration clauses, neither the FAA nor public policy requires parties to arbitrate issues that they haven't agreed to arbitrate and the issue is one of contract interpretation depending upon the intent of the parties. To put the case in context, a training dispute arose between Axis and Reynolds and SRR and rather than arbitrate that dispute under FINRA arbitration, the parties quickly resolved it with a settlement agreement. Reynolds and SRR failed to perform that settlement agreement and Axis sued to enforce it. So the settlement agreement took the place of any arbitration award that might have resulted if the parties had proceeded to arbitration. The question that arises in this appeal related to the arbitration is there is no arbitration agreement in the settlement agreement and the only way that the parties would get there is through the FINRA arbitration provision which provides that for arbitration if disputes arise out of the business activities of a member or an associated person and it's between or among them. So let me make sure that I understand your argument. As you've just said, the settlement agreement doesn't say anything about arbitration one way or the other, correct? Correct. And is it your contention that that lack of discussion of arbitration or of any kind of ways of settling disputes over the settlement agreement, that that takes this case out of the FINRA context or do you say that just leaves it open and then we look over to FINRA to see if this dispute otherwise qualifies as a FINRA related dispute? I'm using that term generally obviously. Sure. I think both are applicable. I think the fact that the settlement agreement does not reference any kind of an arbitration or method of dispute resolution other than the fact that it does actually include a choice of law provision for Florida law to apply to it. But it does not contain an arbitration agreement and since arbitration is a function of contract, that settlement agreement would not be subject to arbitration. What Reynolds and SRR have argued is that despite the lack of an arbitration agreement in the settlement agreement, that the matter should still be arbitrated because of the FINRA rule. And we also argue that the FINRA rule, that this does not come within the FINRA rule because it is not a dispute that rises out of the business activities of a member and in fact, and why that happens is because the settlement agreement itself creates a merger so that the previous claims that might have arisen out of the business activities between the parties were merged into the settlement agreement and now the action is to enforce the settlement agreement. Isn't the settlement agreement pretty clearly related to the business activities of the parties? The settlement agreement was of business activities that are related to the parties. The difference is that once you enter into the settlement agreement, those activities are no longer in play. So now the action that remains is the action to enforce the settlement agreement and the Florida law is clear that the previous claims are merged into the settlement agreement and so any litigation that you might have after that point doesn't re-litigate, re-open to see who would have won without the settlement. Well wasn't the council, wasn't the settlement agreement designed and intended to settle the dispute about Reynolds improper trading activity for Spartan? That is correct and if the settlement agreement were... So how then do you, I guess the problem that I'm having is I don't know how to untangle the two and conceive of them as separate and distinct. If you think of the settlement agreement as a substitute for an arbitration award, which is what it really is, the parties could have taken those claims immediately to arbitration but they didn't. Instead they chose to settle them and they came to a settlement agreement of them. That is the equivalent of an arbitration award and that arbitration award ordinarily would not go back to FINRA arbitration to be enforced. The settlement agreement, the enforcement of the settlement agreement then stands in the place of that arbitration award. It would be treated as if it were the same as the arbitration award and such that FINRA arbitration itself anticipates that that enforcement action would be handled by a court and not by FINRA. And so the language that is used in the FINRA arbitration provision does not contemplate enforcement actions. It contemplates the resolution of the underlying disputes but once the parties agreed on a resolution of those disputes with the settlement agreement, all of those disputes that came before it under Florida law are merged into the settlement. The settlement now is something different. It is something to be enforced. It's an enforcement action and the enforcement action is anticipated to be done by a court. It's as if there had been an arbitration award in which case somebody would have one of the parties, the prevailing party could either take that to court to get it affirmed and then to be able to enforce it or to get it, the other side to get it vacated to avoid enforcement of it. But that enforcement action which is what this settlement agreement, the breach of contract of the settlement agreement is, it's an enforcement action of the parties' resolution of their claims. Is it your view, counsel, that the settlement agreement had no connection to Reynolds' association with FINRA members Spartan and his trading on behalf of Spartan? Isn't there some connection? And if the answer is yes, is any more required as a matter of law? You know, it would be hard for me to, I guess you would probably find it not credible for me to say that there was no connection. I would. Given that the disputes that came, you know, that resulted in the settlement agreement. But it's not really any different in that respect from, you know, an arbitration award, like I said, where you would have these disputes that yes, they would be, the disputes themselves would go to FINRA arbitration. But once those disputes are resolved, and in this case they were resolved by a settlement agreement, then the enforcement of that settlement agreement, that settlement agreement takes the place of the disputes. And so it is, at that point, the FINRA rule for arbitration of these disputes no longer intends that FINRA would decide whether that settlement agreement should be enforced. Just like you don't go back to FINRA arbitration to enforce a FINRA award. And so there is a break there. There's not a, there's, the law doesn't have a but for causation, you know, but for the underlying disputes, there would not have been this breach of the settlement agreement. And so therefore, that dispute is, you know, arising under, should be interpreted to include this breach of the settlement agreement. It requires, and I have to say, I mean, the cases, there is no case just like this one. And so making it more difficult, but the language is really, case law requires that there be a direct relationship between the underlying actions and the dispute, sorry, for something to arise out of. Here the dispute is over the settlement agreement itself. And that settlement agreement breaks the kind of connection between the underlying claims and then what is currently being litigated, which is the enforcement of the settlement agreement. And certainly if the settlement agreement is found by a court to be invalid for some reason, then the underlying disputes would be, would be, continue to have viability at that point, and they would be subject to arbitration. So for this reason, the enforcement of the settlement is not something that is anticipated by the general rules of arbitration. And for that reason, we don't believe that the arbitration, sorry, the settlement agreement itself, the enforcement of it should be litigated, should be arbitrated. It is not something that FINRA arbitration is really set up to address. FINRA arbitration would certainly be set up to address the underlying disputes, but not once those disputes have been resolved, the actual enforcement of the resolution of those disputes. When you say not set up to address, what do you mean by that? If you look at the FINRA rules, there is no rule that talks about what happens after you get a FINRA award. The only, I shouldn't say there are, there's no rule. The one rule that applies is, I believe it's FINRA 13490J, and it talks about that interest would be, would accrue on the award, and it also talks about, says that the party that fails to pay an award could be subject to losing its registration. But the award itself needs, has to go to a court to enforce. There's nothing in the FINRA rules that would address enforcement actions. And for that reason, a settlement agreement should be treated the same as a FINRA award, and the matter should be handled by a court which is in the practice of enforcement actions and is able to address state law when it comes to interpreting both the settlement agreement as well as then the enforcement of it. And this is Judge Carnes, but, you know, if you look through case, or you actually look through a lot of the cases that have been dealt with FINRA arbitration, a lot of these awards address breaches of contract. They're competent, and as a general matter, to address a breach of contract. But you're saying, you're carving out this one narrow breach of contract, which would be a breach of a settlement agreement, saying that one narrow aspect cannot be arbitrated, and so if the arbitrator's going to know all the details and understand all the context, you're saying that one aspect has to go to a court. That's essentially her position. And I see my time is up, so with the court's indulgence, I'll answer the question. Yes, of course. And so, you know, what happens when you, yes, that is my conclusion, is that that aspect needs to go to court rather than to arbitration. And the difference is that when you are actually looking at whether a contract, whether the contract should be enforced, whether an agreement was made, whether the, whether a party performed the agreement, whether there are defenses to the formation of the agreement, the underlying trading activity is not in dispute. That, it doesn't, you know, this is a resolution of that trading activity, but what counts is how the parties reached their agreement and whether they reached agreement and whether that agreement was breached. So while they may be intertwined, that doesn't mean, that doesn't mean that the parties actually agreed to, number one, arbitrate that, the enforcement action. And number two, you know, the case law, and Dean Winter Reynolds' case in particular has talked about how you can have separate, cases can be, I mean, intertwined so that you can have things that are arbitrated and things that are in court and they are intertwined, but that doesn't preclude them from happening in different forms. Thank you. Thank you. Thank you. Now we'll hear from Mr. Ford for access clearance. Matthew Aaron Ford on behalf of Scott Richard Reynolds and SSR Fortress Capital. Good morning, Your Honor. Thank you. This case is about forum shopping. This case represents an ongoing attempt by access clearing to litigate the exact same dispute simultaneously in two different forums. They come before this court and they request reversal of the lower court's order, compelling arbitration and dismissing this action. At the same time that they have done that, they went to Florida, or they went to California federal court, where there was a stay on this arbitration and filed papers stating that the stay should be removed and that the arbitration must proceed because they are being prejudiced because they can't participate in the arbitration. They just argued to the court that the purported settlement agreement replaced any FINRA arbitration award and therefore there would be no arbitration. What they didn't tell this court is that they have entered into a joint defense agreement with Spartan Securities, Mr. Reynolds' former employer, whereby Spartan Securities is suing Mr. Reynolds in FINRA arbitration, seeking the money for the deficit in Spartan's clearing account with access clearing. In other words, if they lose in federal court, they can win in FINRA arbitration. And if they win in FINRA arbitration, they can lose in federal court. Can you tell us where in the record those particular agreements are referenced? I have to say they are not in this record. They are part of the FINRA arbitration. However, I can say, and I think that if not a matter of public record, I will say that just a couple weeks after the filing of the federal lawsuit, Spartan filed the arbitration against Mr. Reynolds. And along those lines, I will say that in the event that this case gets sent back down to the federal court, our first move is going to be to move to dismiss for failure to join a necessary party. Why is Spartan a necessary party? If we go back to the actual purported settlement agreement that they're seeking to enforce, if we just look at recital number one, the first words in the settlement agreement, it says that the settlement agreement is intended to settle a deficiency in Axios Clearings account based on trades that were placed. Mr. Reynolds doesn't have an account with Axios Clearing. He doesn't have a deficiency, and he never placed trades that were cleared through Axios Clearing. He doesn't even have that relationship. These trades were placed on behalf of Spartan Securities. So the settlement agreement on its face is intended to address those trades placed by Spartan. Why is this important? Well, as we've seen and as this case has unfolded, it turns out that there was originally an agreement between Axios Clearing and Spartan Securities, to which Mr. Reynolds was a side party. He had basically agreed on Friday, I can get some cash to Axios Clearing as long as on Monday everything goes back to business and we can start trading again. Instead, they sent Mr. Reynolds a settlement agreement and told him, we're sending another agreement at the same time to Spartan Securities concurrently. Well, Mr. Reynolds signed the agreement, and lo and behold, the agreement was never sent to Spartan. Of course, Spartan CEO immediately texted Reynolds, don't send them any money. They breached our agreement. In fact, the CEO of Spartan called Spartan's attorney, Alan Wolpert, and they said, Alan, you have to help Scott. Now, Spartan's attorney got in contact with Scott, called him on the phone, sent him emails, sent him text messages, and even helped draft an affidavit on behalf of Spartan's chief compliance officer. And the attorney, Mr. Wolpert, said, Scott, do not send that money. Axios Clearing has breached the agreement. They agreed to settle the account deficiency with Spartan, and they were going to allow Spartan to stay in business and for you to continue trading. These are the constellation of facts that form the dispute that's at issue. Now, we can go back. This is Judge Grant. I've got one question for you. In your view, what would the integration clause have to say in order to supersede FINRA arbitration? I think it's really simple, and any attorney in private practice will tell you. You have both – you're dealing with all FINRA members in this case, and an associated person, Mr. Reynolds, who's registered with FINRA. And you also have a clearing agreement that specifically states in Section 9.1 that the clearing agreement between Spartan and Axios applies to its employees. So it's very simple. As an attorney in private practice, if you're sitting down to draft a settlement agreement, all you have to do is write up a very simple clause that says that this case is governed by the Southern District of Florida Federal Court. It's that simple. I think it's a very easy provision to include. If you want it to be even more precise, and I think this would be the better course of action, I would put in, if I were drafting it, something along the lines that any prior agreements to arbitrate are superseded by this agreement. Very simple language. Of course – Your second argument makes sense. I'm not quite sure how different your first argument is from, say, the governing law provision that is in the contract that says, the agreement is made and entered into the State of Florida and shall in all respects be interpreted, enforced, and governed under Florida law. I view that only as a choice of law provision, not as a choice of foreign provision. If you look at the cases we cited, and unfortunately, in the Eleventh Circuit, we looked and we really couldn't find anything exactly on point, but we do cite two cases from the Second Circuit as well as a case from the Fourth Circuit, and they're very clear that because of the preference for federal courts for arbitration, if you want to supersede a prior arbitration agreement, you need to be clear that that's what you're doing. So I think a simple choice of law clause that says, hey, we're going to do this under Florida law, it doesn't suffice. Does it get you there? No, I think you need to expressly state that you're superseding the prior arbitration agreement. So if we can go back to looking at what this dispute is about, and remember, when we're talking about whether the dispute arises under the business activities of FINRA members on the one hand, or if it relates in any way to the clearing agreement, we're talking not just about a single breach of settlement claim, we're talking about the entire dispute. The amended complaint, Mr. Reynolds' claims and counterclaims that he's raised, the settlement agreement itself, the conduct of the parties, and so forth. We're looking at the entire dispute. If we go to the amended complaint itself, while Axios has taken the position that this agreement doesn't mention Spartan, doesn't really have anything to do with Spartan, the amended complaint lists Spartan securities 67 different times. If you could indulge me at the risk of being slightly tedious, I would like to just read one paragraph from the amended complaint. Two, actually. So if we look at paragraph 32, it says, in addition, FINRA imposes upon all of its members a requirement to observe high standards of commercial honor and just and equitable principles of trade in all business conducted by the member, FINRA Rule 2010. Paragraph 33. As a trader at Spartan, Reynolds was required to conduct himself in accordance with FINRA standards. It really strains credulity here to argue that this amended complaint doesn't have anything to do with FINRA. As I already went over, the settlement agreement itself, at least in the opening recital, makes clear what dispute it is resolving. We have, of course, taken the position that, and it is supported by evidence, that Mr. Reynolds did not make any authorized trades. He did not engage in any wrongdoing. It's certainly part of our defense, and as we've come to find out, there was misleading statements and misrepresentation that caused him to sign that settlement agreement. When we go back and review it, whether it's in arbitration or in federal court, what I would like to be able to do is to raise those defenses. Again, I think it directly relates, certainly arises from the business conduct of FINRA members. I would just like to raise one other quick point. Because of this forum shopping issue, Mr. Reynolds has been placed in the unenvious position of litigating this dispute in two separate forums. What I would request of the court, and it can be done to esponte or we would certainly offer to do additional briefing, is that the arbitration be stayed pending a final decision. What I would like to have for my client, because I am so confident in our case, I would like to get the ball rolling in one form or the other. We've had a long, rocky road. There's been stays put on the arbitration by federal court. There has been stays of the arbitration by FINRA. There has been a lot of filings, and we have been simultaneously litigating for over a year and a half in two separate fora. I would really request that we resolve the issue or stay the arbitration, at least temporarily, until we can make a decision once we're all on the floor. With that, I would just like to ask if there are any questions of the panel that I might be able to answer regarding our briefing. Judge Carson, Judge Marcus, I'm hearing no questions. I think we thank you for your argument, Mr. Ford. Okay. I appreciate it, and have a great day, Your Honor. Thank you. Ms. Vogel. Yeah, just to respond briefly. The initial argument that was made by my colleague is that all talked about defenses that would be raised in opposing the enforcement of this settlement agreement. And we anticipate that Mr. Reynolds and SRR would raise defenses to the settlement agreement, but our position is not... At this point, it's not for this court to litigate those defenses, but rather to choose the forum in which those defenses should be litigated. And it is our position that the forum for those defenses to the settlement agreement to be litigated is the district court. It is the defenses that they would have to enforcement of what is essentially an arbitral award, but by way of the party's agreement, their settlement agreement. Isn't Mr. Ford correct that it would have been pretty simple to include in this settlement agreement a provision taking this dispute out of SINRA arbitration? So the interesting thing about that is that it could have had a provision in it, but it just as easily could have had a provision that chose SINRA arbitration, correct? And that is the point, is that arbitration is a matter of contract. It's the choice for arbitration. The default would be to district court. In order for it to go to arbitration, there would have to be an agreement to arbitrate. And there are indications in the agreement that the parties never did that. They didn't agree to arbitrate the enforcement of the settlement agreement. And the main one is the one that has already been pointed out, which is the governing law and choosing that Florida law would apply here. It would be interpreted, enforced, and governed under Florida law. That would not... I don't think anybody could read into that as an indication or an intent to arbitrate a claim by choosing Florida law to govern. SINRA arbitration most often is not even conducted by attorneys. And certainly, if this did go to SINRA arbitration, the SINRA arbitrators would be required to apply Florida law in determining the enforcement of the agreement. But as I stated before, SINRA arbitration is not set up for enforcing what is the equivalent of an arbitral award. That function is left for courts, either by seeking to affirm or vacate an arbitral award itself, or in this case, to enforce the settlement agreement between the parties. And I think my time is expiring, so if there are no further questions, we will submit. And thank you very much. Thank you very much.